### NIVEN *v.* BELKNAP, 2 J. R. 573.

*Mortgagor and Mortgagee.    Fraudulent Conveyance.*

THIS was a bill—*quia timet*—filed by a purchaser against a mortgagor under the following circumstances:

Niven applied to Belknap to purchase a farm, then in possession of Belknap, and was informed by him that John Brush, of Long Island, had a mortgage or mortgages on the farm, and that he had given it up to him in satisfaction, &c., and that Brush had the entire disposal of it, and was to make the best of it, to satisfy himself for the moneys due to him. B. and N. accordingly went to Brush, together, and an agreement was made between Brush and Niven in the presence of B. for the absolute purchase of the farm, and Brush thereupon executed a conveyance in fee to N., who afterwards took possession of the farm as owner, and made considerable improvements. About ten years afterwards the mortgagor made an absolute conveyance of the farm to his own son, who was a neighbor of Niven, whereupon N. filed a bill, *quia timet*, against B. and his son, praying that they might discover the title they pretended to have to the premises, and might be decreed to renounce such pretended claim, or be perpetually enjoined from asserting it to the prejudice of the complainant.

The Chancellor in March, 1806, pronounced the following final decree, (considering the *grantee of the mortgagor* as entitled to redemption, though *not in that suit.*)

" This cause having been heretofore heard, and the opinion of the court having been given, that the complainant's bill was not sustainable, but it being insisted on the part of the defendant that he was entitled to redeem the mortgaged premises, &c. Whereupon further day was given to the parties on that subject; and Mr. Harrison, of counsel for the defendant, consenting to the dismissal of the said bill: Thereupon, &c., ordered. Bill dismissed with costs, &c."

On appeal, this decree was reversed unanimously by the Court of Errors, Thompson, J., delivering the opinion of the court. He says that—" The conduct of Belknap had a direct tendency to deceive and mislead, unless his intention was to

assist the appellant in obtaining an absolute title to the farm." "It cannot, I think, be doubted but that the respon- ent, B. (the son,) is to be considered in the light of a pur- chaser *with notice ;* and of course the same rule of law and principles of equity apply to him as to Abel B., his father, from whom he purchased."

*Decree*—"That the son execute and deliver a competent release of all his title, &c., to the appellant, and pay the costs of the appellant in the court below—and that, in case of death so that the release could not be executed, that the Chancellor award a perpetual injunction in favor of appel- lant, according to the prayer of his bill, &c."